In the Matter of the Estate of HARRY L. GROSS, Deceased. FLORENCE WITT, Appellant; DORIS GROSS, as Executrix of HARRY L. GROSS, Deceased, Respondent.—

Munder and Martuscello, JJ., concur; Christ, P. J., concurs, with the following memorandum, in which Rabin, J., concurs: Once having determined that the 1964 stockholders' agreement was not an invalid testamentary disposition (*Matter of Hillowitz*, 22 N Y 2d 107), there still remains the question of the testator's intent. A careful reading of all the pertinent documents indicates that his prime and controlling intent was to provide first for his wife and only secondarily for those who would benefit under the testamentary trust. Thus, at the time the testator made his will, there was an existing partnership agreement, executed in 1956, which provided for (1) payment of the value of the testator's partnership interest to his estate, in monthly installments of $200 each, and (2) payment of the sum of $100 per week to his widow, " as income, and not on account of principal ". When this disposition is considered together with the provisions of the 1963 will, it is apparent that only the value of the testator's partnership interest would pass under the will to fund the trust, with his widow receiving her $100 per week income individually. The stockholders' agreement executed subsequent to the will provided, however, that the value of the testator's corporate interest be paid to his widow at the rate of $200 per week, with the balance to go to his estate if she died before final payment of the agreed value. If she survived such final payment, she was also to receive an additional $100 per week for life. Accordingly, no funds would pass to the estate unless the testator's widow died prior to final payment of the agreed value. The Surrogate's decree was correct. Upon the testator's death, the executrix herein, as the widow, became entitled to the agreed value of his corporate interest pursuant to the stockholders' agreement, free and clear of any trust. These moneys were intended for her personal benefit and did not become subject to the testamentary trust. Hopkins, J., dissents and votes to reverse the decree and remit the proceeding to the Surrogate's Court for a hearing, with the following memorandum: The question is primarily one of intention. The will, before directing that the proceeds of the testator's interest in the partner-

ship be held in trust by his wife, in the same article provided: "I have been and am now a partner in the partnership known as H. L. Gross & Bro., and I have entered into a partnership agreement and various other undertakings *and subsequent to the making of this Will I may enter into various other agreements and undertakings that will direct the disposition of my interest in the said business or any successor in the interest to the said business*" (emphasis supplied). In fact, within nine months after the making of his will, the testator with his partners changed the form of the business into a corporation and entered into a stockholders' agreement which directed the disposition of his interest in the business. Since no hearing was held by the Surrogate upon this accounting, we do not know whether the formation of the corporation and the preparation of the stockholders' agreement were expressly contemplated when the testator made his will. But it is evident from the language of the will that he contemplated at some time in the future the making of agreements relating to the disposition of his interest in the business and that he intended that the direction in his will — that his wife hold the proceeds of that interest in trust — prevail over any other provision in a subsequent agreement. No doubt, the stockholders' agreement does not fail as a testamentary gift, for the wife takes as a third-party beneficiary under the agreement (*Matter of Hillowitz,* 22 N Y 2d 107). But the nature of the wife's rights as a third-party beneficiary remains to be determined. Though she plainly receives the proceeds of the interest, the issue is whether she receives them as trustee, as the will provides. On the basis of the meager record before us, consisting mainly of the will and the agreements of the partners and stockholders, we are at a loss to settle the nature of the wife's rights, for the following reasons: 1. The capacity of the wife as the recipient of the proceeds of the interest is described as a trustee under the will, and apparently as an absolute owner under the stockholders' agreement. This inconsistency leads to the inquiry whether a revocation of the will's provisions *pro tanto* was worked by the agreement (cf. EPTL 3-4.2, 3-4.3). Extrinsic evidence should be adduced to establish the facts surrounding the execution and purpose of the two instruments so that the intention of the testator may be ascertained (cf. *Matter of Ward,* 9 A D 2d 950, affd. 9 N Y 2d 722; *Matter of Hedden,* 7 A D 2d 764; *Matter of Mueller,* 34 Misc 2d 584; 64 N. Y. Jur., Wills, §§ 512, 552, 553). 2. It cannot be said as a matter of law that the wife's rights as a third-party beneficiary were indefeasible. The question whether the rights of a donee beneficiary (such as is the wife here) can be altered by the act of the donor has not been clearly resolved in New York. Some authorities elsewhere hold that the donee beneficiary cannot be affected by the donor, once the contract has been made (2 Williston, Contracts [3d ed.], § 396), but the question has not been clearly presented in New York (cf. *Salesky* v. *Hat Corp. of Amer.,* 20 A D 2d 114). It seems illogical not to permit the donor to change the terms of the contract, since the rights of the donee spring from the contract; even a creditor beneficiary's rights may be modified until the creditor has changed his position to his detriment in reliance on the contract. As the will speaks as of the time of death, the stockholders' agreement could be validly changed by the will, unless it is said that the agreement is indefeasible. I do not believe *Forman* v. *Forman* (17 N Y 2d 274) holds to the contrary. In that case the Court of Appeals would not allow a husband under a separation agreement to change unilaterally the provisions of the agreement for the benefit of the children of the marriage. However, it must be observed that the promises of the wife were undoubtedly made in consideration of the provisions beneficial to the children; and, of course, the husband had an obligation distinct from contract to support his children. Here, it is improbable that the other stockholders possessed any interest as to whom

the testator intended to require payment of his share of the business — the amount of payment, rather than the capacity of the recipient, would be their sole concern. In short, the rule should not demand an inflexible consequence that the donor can never shift the terms of his gift under a contract for the benefit of a third party; the rule, instead, should be that the intention under the contract as reflected by the surrounding circumstances ought to govern. 3. It should be noted that the issue of ademption is not present here. The proceeds of the testator's share in the business, whether in a corporate form or as a partnership, were an asset of the testator at the time of his death. It begs the question to say that the asset had been extinguished by the stockholders' agreement (cf. *Matter of Wright*, 7 N Y 2d 365; *Matter of Becher*, 204 Misc. 523; 65 N Y Jur., Wills, §§ 785, 849, 850). 4. Since the intention of the testator is ambiguous from the reading of the two instruments, and intention is always the critical fact in the construction of a will (*Matter of Lyons*, 271 N. Y. 204; *Matter of Holmes*, 26 A D 2d 151), a hearing must be held. As the Court of Appeals recently said in considering the effect of a will on a Totten trust, "In such a case it is necessary to scrutinize the surrounding circumstances and the will as a whole, very carefully, in determining the true intention of the testatrix" (*Matter of Krycun*, 24 N Y 2d 710, 713). The will is carefully drawn to erect a trust as to this asset; the stockholder's agreement is poorly drafted, even in parts incomprehensible, and apparently not the creation of an attorney. It makes little difference in the ultimate result whether the will speaks as of the time of making, or as of the time of death; what is important is that the two instruments which bring about this controversy be viewed in the light of the surrounding circumstances, and their conflicts reconciled. At a hearing evidence relating to the preparation and execution of the instruments, the change of the business into a corporation, the benefits received by the parties on this appeal from the testator under the will or before his death, and his relationships with the parties, among other things, could be received and evaluated.